TRULINCS 85350053 - LEWIS, OSWALD - Unit: BRO-J-C

---

FROM: 85350053
TO: Evans, Tony; Lewis, Arlene
SUBJECT: ADJUSTMENTS TO ENHANCEMENTS (15 to 17)
DATE: 09/25/2016 06:15:20 PM

ENHANCEMENTS AMENDMENTS: USE OF BODY ARMOR (3B1.5 2.A) 2 level enhancement:

The PSR applied (3B1.5 2.B) enhancement to count three and count four. This is the incorrect enhancement to apply. This enhancement only applies to offense conduct, if the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for the offense to be increased by 4 levels. Guidelines (3B1.5 2.A) is applied if the offense just involved the use of body armor increase by 2 levels, this is the more appropriate enhancement for the offense conduct in the instant case.

Facts of the case prove the defendant surrender, the 4 level enhancement under (3B1.5 2.B) is unwarranted. There was no attempt to avoid apprehension, or preparation for offense. The police saw the vest, only when defendant was walking out the front door screaming for help and a witness. (See exhibit 4) The 105th pct police report. Also the defendant was shot first before he put on vest to walk outside while screaming for a witness, and EMS and saying somebody help me. The evidence proves the defendant was injured and complied. The government can not find offense conduct by speculation or surmise. Furthermore even though the government need not prove motive, all crimes require some form of motive, the defendant had no motive to prepare because he clearly didn't know who, crash through the front door, also the defendant was yelling for help. saying, "CALL EMS HE BEEN SHOT"..YELLING OUT FOR EMERGENCY ASSISTANCE, is not conduct that is consistent with avoiding apprehension. The body armor was put on for defendants own safety After being shot and continuously being shot at behind a closed bedroom door. The vest should not imply that he himself posed a threat. The FDNY reports proves the defendant, was assaulted and he was laying on ground incapacitated. Defendant exited the apartment with hands up, into confusing yelling and screaming, by a group of plainclothes law enforcement, then got down to his knees, laid faced down thereafter, he was viciously assaulted by a DUSM. See TR.495 TR.504 Therefore the appropriate enhancement would be 3B1.5 2.(a) a 2 level enhancement. (See exhibit 5) also see Lewis00000741,742,747.

ENHANCEMENTS AMENDMENTS: OFFICIAL VICTIM 3A.1.2(C)(1): 6 level enhancement:

The Guideline unlike the statue, requires that the defendant know that he is involved with an official victim 3A1.2(b). 3A1.2(C)(1) States knowing or having reasonable cause to believe that a person was a law enforcement officer, assault such officer during the course of the offense or immediate flight. For enhancement under 3A1.2 (C)(1) defendant must know or have reasonable cause to believe the victim is an officer, a belief that he might be one is insufficient see United States v. castillo 924 f. 2d 1227 1235-36 (2d cir 1991). Only if the offense was motivated because of the status of that person, who was member of law enforcement then the enhancement applies. see United States V. Hoffer 1988, (S.D.N.Y) 680 FSUPP 673. Finally jury JURY DID NOT FIND THAT DEFENDANTS CONDUCT WAS MOTIVATED BY OFFICERS STATUS..AND THE GOVERNMENT DID NOT ASK JURY TO FIND DEFENDANT GUILTY ON THE FACT THAT DEFENDANT, WAS MOTIVATED BY THE OFFICIAL STATUS OF THE LAW ENFORCEMENT. THERE FORE THE 3A1.2(C)(1) OFFICIAL VICTIM ENHANCEMENT IS INAPPLICABLE. see Cirilo-Munozu v. U.S. 404 f.3d 527, 536 535 (1st cir 2005).

ENHANCEMENT AMENDMENTS: 2A2.2 (b)(7) AGGRAVATED ASSAULT: BASE OFFENSE level:14
The PSR proposes the use of Guideline 2A2.2(b)(7), is inapplicable for the instant case. USSG requires the district Court to select the applicable Guidelines section based only on the conduct charge in the Count of the indictment on which the defendant was convicted. The defendant was convicted of assault on federal officer in engaging in their official duties, which is section USSG 2A2.4 the correct application usage for the offense characteristics. Not 2A2.2 aggravated assault. Basing a sentence in the wrong U.S Sentencing Guidelines Manuel section is a fundamental error affecting, substantial rights. The applicable U.S Sentencing Guidelines Manuel section must be determined by the offense of conviction. See U.S Sentencing Guidelines Manuel 1B1.(a). Guideline section 1B1.3 instructs that unless other wise specified, cross references shall be determined on the basis of all acts and omissions committed by the defendant that occurred during the commission of the offense of conviction. There was no injuries or substantial steps in the offense conduct. Finally the offense conduct was not more severe than that alleged in the underlying indictment, therefore the use of the Cross Reference Section should not apply in this case. SEE NY Model penal code 210.6(3) Aggravated element, aggravating factors. See Luscier 983 f.2d 1507 (1992).

2A2.2 Aggravated Assault was never used in indictment nor was it charge to the jury. The comments to US Sentencing Guidelines Manuel 2A2.2 define aggravated assault as felonious assault that involved(1) a dangerous weapon with intent to cause bodily injury i.e. not merely to frighten with that weapon(2) serious bodily injury or (3) an intent to commit another felony. The overlap between USSG 2A2.2 2A2.4 (b)(1). 2A2.2 requires only that a felon assault involved serious bodily injury.

TRULINCS 85350053 - LEWIS, OSWALD - Unit: BRO-J-C
----------------------------------------------------------------------------------------

An application note to USSG Manuel cannot be disregarded by District Court unless it is inconsistent with the related Guideline.

THE CROSS REFERENCE SECTION IS DESIGNED TO ALLOW ENHANCED SENTENCING WHERE THE CONDUCT PROVEN IS MORE SEVERE THAN THAT ALLEGED IN THE UNDERLYING INDICTMENT. IN THE DEFENDANTS CASE THE CONDUCT WAS MITIGATED.

A crime of violence involves conduct that presents a serious potential risk of physical injury to another. In United States V. Johnson the "RESIDUAL CLAUSE" was held to be vague and invalid. Because the text of the residual clause provides little guidance on how to determine whether a given offense involves conduct that present a serious potential risk of physical injury. The Supreme Court said that this provision leaves grave uncertainty about how to estimate the risk posed by a crime. Also how much risk it takes for a crime to qualify as a violent felony was unconstitutionally vague in Johnson v. United States 2015 BL 204915 (U.S 2015) (97 CRL 403, 7/1/15).

In the defendant's conduct the mitigating circumstances proves the conduct was involuntary. The conclusive evidence of force was towards an object the AC UNIT. See Robin Steneck TR.290 and TR.277 the defendant's opening statement is consistent with this testimony. The bullets in the shed RS19 RS20 were both inconclusive and unsuitable for comparison, the evidence of assault was not towards the shed. The lack of trajectory reports, the NYPD detectives exculpatory testimony was insufficient to find willfulness. See TR.503 TR.502 TR.499 TR.498, the defendant simply did not commit those acts. Also see Jonathan fox's TR.378,379,384,399,400,402 and lewis00000747. This should be given due consideration, in the conviction of element of willfulness in the assault counts. Further, the overwhelming mitigating circumstances Lewis submitted in his motions out weighs any inference of aggravating assault. The government failed to prove any aggravating circumstances, the defendants acquittal, of the greater offense supports this fact. The governments use of the cross reference section, is inapplicable in the instant case. The conduct was overstated, USSG 2A2.2(b)(7) should not apply because 111(b) is an already enhanced penalty, also to avert any remand issues at sentencing. BRADY 928 F.2D 844 U.S APP.

The more accurate guideline for the offense charged would be 2A2.4 ASSAULT BASE OFFENSE LEVEL 10 2A2.4 obstructing and impeding an officer in the line of his official duties is what the defendant was charge with in the indictment. The defendant was not charge with aggravated assault. Obstructing, impeding officers while engage in his official duties, is the underlying crime in the indictment. Using a different Guideline would violate the commands of 1B1.2 to base selection of the most applicable guideline section on the conduct charged in the relevant section of the underlying indictment.

Although the base offense level is 10 for Guideline (2A2.4), a 3 level increase is applicable for the use of a firearm, under guideline (2A2.4),thereby, adjusting the base offense level to 13. Also under guideline (2A2.4) obstructing impeding an officer the base offense level incorporates the fact that the victim was government officer performing official duties therefore 3A1.2 (C) (1) is inapplicable under this Guideline. See 2A2.4 obstructing or impeding officers application notes. 2 USSG. U.S Sentencing Guideline Manuel (2A2.4) application note 1 instructs the COURT NOT TO APPLY USSG Manuel 3A1.2 (official victim) Also 2A2.2 (b)(7) would not apply under guideline (2A2.4), this Guideline only applies when section (2A2.2) Aggravated assault Guidelines is used. 2A2.2 AND 3A1.2( is inapplicable to the instant case. Count three assault on federal officer and count four assault on detectives assisting federal officers. The government was required to charge in the indictment and then prove to the jury beyond a reasonable doubt, the offense was an Aggravate Assault and defendant's conduct was motivated by there official status. Because of These facts Guidelines 2A2.2 and 3A1.2(c)(1) enhancement is inapplicable. See Cirilo-munozu. V. U.S 404 F.3D 527, 530-535 (1ST CIR 2005).

ENHANCEMENTS AMENDMENTS: OBLITERATED SERIAL NUMBER 2K.1 922(k): 4 level enhancement:

The second circuit has held that SINCE PENALTY PROVISION FOR 2K2.1 ONLY APPLIES WHEN DEFENDANT KNOWINGLY VIOLATES 922)K) UNITED STATE V. HOOKER 997 F.2D 67 (1993). WITHOUT KNOWLEDGE ELEMENT THAT CONVICTION WAS ERROR. United States v. Halie 2012 ca11ca 685 f.3d 1211,23 FLWFEDC1244.

The argument of possession, of firearm with obliterate serial number, stating knowledge that a serial number has been obliterated can be inferred from circumstantial evidence; The defendant states, Constructive possession of firearm alone cannot be sufficient to establish a defendant's knowledge of obliterated serial number because if it was sufficient, the standard would eviscerate the knowledge element of 18 USCS 922(k) altogether.

Since the recent revolution in sentencing the Supreme Court stated: The Courts can make its own decision about whether to apply an enhancement that perhaps was ill considered by the Guidelines. see united State v. Handy 570 f. supp 2d 437 USSG 2K2.1(b)(4) enhancement violated the requirement of knowledge.

United State V. Handy further states: The same due process requirement for legislative enactments that conduct without

TRULINCS 85350053 - LEWIS, OSWALD - Unit: BRO-J-C

---

culpable mens rea cannot be criminalized except for minor strict liability crimes, is applicable to the work of the sentencing commission consistent with fundamental legal tradition that blame worthiness hinges upon a culpable state of mind, the defendant's Guideline calculation must be predicated upon culpability, see United States V.Polizzi 549 f supp 2d 308, 349-53 EDNY 2008)(Citing authorities on mens rea) United States V. Cordoba-Hincapie, 825 f. supp 485, 527(EDNY 1993)THUS, THE COMMENTARY TO SECTION 2k2.1(b)(4) of the sentencing Guidelines is invalid.

The defendant put forth sufficient evidence of the fact that he didn't know it was a defaced firearm. The government gave no evidence to jury that the defendant himself knew of the obliterated serial number on firearm, guilt was found on surmise. The defendant has also in his motion prove that CSU incorrectly identified the wrong firearm as being deface whether done by error or deception this fact was made clear from there police report. The courts decision not to give the instructions may be an abuse of discretion if (1) The requested instruction was a correct statement of the law.(2) its subject matter was not substantially covered by other instructions and(3)the failure to give the instruction seriously impaired the defendant ability to defendant himself. Finally, the indictment itself failed to include a scienter element with regard to the obliterated serial number. The Court could not conclude beyond a reasonable doubt that jury verdict would have been the same absent the error..the conviction should be vacated, the enhancement would violate the defendants Six Amendments rights, because conviction was not found and prove by jury or admitted by defendant. Count 8 would be an unfair enhancement.

Finally a Court may consider lenity in imposing a sentence when issues arise as to evidence when a defendant, raises sufficient information that should fairly be taken under consideration at sentencing.

RESPECTFULLY SUBMITTED
OSWALD A. LEWIS

cc
Clerk of Court by hand
AUSA Jonathan P.LAX by mail
Probation Department Jeremy Neiss by mail

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

OSWALD, LEWIS
MRN: 2180726
DOB: 6/9/1970, Sex: M
Adm: 8/26/2014, D/C: 8/28/2014

### Consultation - Encounter Notes (continued)

C/D: 0.2 ou
Mac: normal ou
Vessels: normal ou
Periphery: normal od. Os: RPE hypertrophy and pavingstone degeneration in temporal periphery. Commotio retinae in inferior, temporal, and superior peripheral retina.

CT facial/orbits/sinus:

There is LEFT periorbital soft tissue swelling. This extends over the LEFT maxilla and zygoma. Incidental note is made of nonspecific hyperdensities over the LEFT lateral supraorbital region. No significant inflammatory changes in this region and this may represent dystrophic calcification.
The globes are intact. Intra-and extra conal orbital structures are grossly normal. There is no evidence of orbital fracture.

There is a mildly displaced LEFT nasal bone fracture. No evidence of RIGHT nasal bone fracture. Zygomatic arches are intact. Pterygoid plates are intact. Temporomandibular joints and mandible are intact. Paranasal sinuses are grossly clear.
**IMPRESSION:**
Mildly displaced LEFT nasal bone fracture. LEFT periorbital soft tissue swelling extending over the LEFT maxilla and zygoma. Probable dystrophic calcifications in the subcutaneous tissue over the LEFT lateral supraorbital region. Correlation with physical examination is recommended. No other acute facial bone fractures. Orbital structures are grossly normal.

A/P:
1. Blunt trauma to left eye: with edema, conjunctival hemorrhage, commotio retinae, and possible traumatic ptosis.

   - cool compress for periorbital edema
   - pt is at increased risk for traumatic iritis and angle recession. Recommend follow up at JHMC ophthalmology clinic within 2 weeks of discharge.
2. RPE hypertrophy, pavingstone degeneration
   - recommend establishing care with a regular ophthalmologist after discharge to for long-term care, and to obtain photodocumentation of peripheral retinal lesions.

Electronically signed by Conn M Graves, MD on 8/28/2014 10:07 PM

Consultation by Edward Delsole, MD at 8/27/2014 1:50 AM                                        Version 1 of 1
Author: Edward Delsole, MD              Service: Orthopedics             Author Type: Resident
Filed: 8/27/2014 2:02 AM                Note Time: 8/27/2014 1:50 AM     Status: Signed
Editor: Edward Delsole, MD (Resident)
Related Notes:      Cosigned by Nader Paksima, DO (Physician) filed at 8/28/2014 6:22 AM



N.Y.P.D. CRIME SCENE UNIT
CSU RUN # 14/0604
DEPARTMENT INVESTIGATION
105 PCT.   27AUG14
144-47 175 STREET, 1FL, QNS NY
DIAGRAM FOR ILLUSTRATION ONLY;
NOT TO SCALE

LEGEND:
RS1  - ONE (1) FIREARM
RS2  - ONE (1) SHELL CASING
RS3  - ONE (1) SHELL CASING
RS4  - ONE (1) SHELL CASING
RS5  - ONE (1) SHELL CASING
RS6  - ONE (1) SHELL CASING
RS7  - ONE (1) SHELL CASING
RS8  - ONE (1) SHELL CASING
RS9  - ONE (1) SHELL CASING
RS15 - ONE (1) CARTRIDGE
RS16 - ONE (1) SHELL CASING
RS17 - ONE (1) DEFORMED FIRED BULLET

14 CR 523 (S-2) (ILG)

N.Y.P.D. CRIME SCENE UNIT
CSU RUN # 14/0604
DEPARTMENT INVESTIGATION
105 PCT.   27AUG14
DIAGRAM FOR ILLUSTRATION ONLY;
NOT TO SCALE
DET. R. STENECK #882

LEGEND:
RS10 - ONE (1) VEST/BELT
RS11 - ONE (1) BLOOD SWAB
RS12 - ONE (1) FIREARM
RS13 - ONE (1) SHELL CASING
RS14 - ONE (1) DEFORMED FIRED BULLET
RS18 - ONE (1) DEFORMED FIRED BULLET
RS19 - ONE (1) DEFORMED FIRED BULLET
RS20 - ONE (1) DEFORMED FIRED BULLET
RS21 - ONE (1) DEFORMED FIRED BULLET
RS22 - ONE (1) SHELL CASING
RS23 - ONE (1) SHELL CASING

14 CR 523 (S-2) (ILG)

16. **911 Calls**
    a. Total number of 911 callers: Five (5)
        1.
        2.
        3.
        4. Unknown — someone was yelling "help"
        5. Unknown — someone was yelling "Call EMS, I've been shot"
    b. Number of callers interviewed by Detectives: Zero (0)

17. **Witnesses**
    a. Total number of witnesses: Two (2)
    b. Number of eyewitnesses, including what they specifically saw and if they can ID: Zero (0)
    c. Number of ear witnesses: Two (2)
        1. He also heard a man yell "I need a witness".
        2. He then heard a male yell "I'm coming out, I need a witness".

18. **Video**
    a. Location(s) of probative video: No video located

19. **NON-NYPD Agencies Involved:** United State Marshal's Office | United States Attorney's Office

Page

Printed on 8/7/2015 02:27 PM

**OSWALD, LEWIS**   Scan on 8/27/2014 by User: CGUZZARD

8/26/2014  11:44 PM   FROM: FAXCORE   TO: 7182066031   P. 3

**FlexFields:**

| FlexField | Value |
|---|---|
| IV Additional Information - Flow Chart: Treat Code [7] | |
| Catheter Size: | 18g |
| IV Site: | L Forearm |
| Flow Chart: Med Code [1] - Medication Complication | Not Reporting |
| Flow Chart: Med Code [2] - Medication Complication | Not Reporting, Not Known |
| Flow Chart: Med Code [3] - Medication Complication | Not Reporting |
| Flow Chart: Med Code [4] - Medication Complication | Not Reporting |
| Flow Chart: Med Code [5] - Medication Complication | Not Applicable, Not Reporting, Not Known |
| Flow Chart: Med Code [6] - Medication Complication | Not Reporting |
| Flow Chart: Med Code [7] - Medication Complication | Not Known |

**Narrative History Text:**
24 Y/O MALE ALERT AND ORIENTED TIMES 3 UNDER POLICE CUSTODY SHOT TO LEFT WRIST AND PUNCHED TO LEFT EYE AND NOSE. PT NORMOTENSIVE, SINUS TACH AND SPO2 99%. PT WAS FULLY IMMOBILIZED AND TRANSPORTED TO H34 BY THIS UNIT ASSISTED BY 64E1. IV ACCESS LEFT FOREARM AND OXYGEN VIA NRB.

**Unable to Sign:**
Unable to Sign Reason: Physically incapable
Authorized Representative: No authorized representative is available or willing
Authorized Representative Signature: No
Secondary Documentation: Unable to obtain secondary documentation
Secondary Documentation Signature: No
Comment:

Auth Signature: No   Privacy Sig: No   Unable to Sign: Yes   Refused to Sign: No

**Signature Image(s):**
Authorization Signature                     Privacy Notice Signature

Receiving RN / MD Signature - nurse m - 08/27/2014 00:26     Technician Signature - Duque, Susanne - 08/27/2014 00:27

*SNurse*                                    [signature]

PCR 1 of 1